## HUMPHREYS COUNTY v. HOUSTON COUNTY.

CHANCERY JURISDICTION. *New counties.*. The creation of a county is a legislative and not a judicial function, but the Chancery Court has jurisdiction to prevent the violation of the Constitution and law in fixing the boundaries of the new counties, and in securing to the old counties out of which the new one is carved so much of their territory as is declared inviolable, or by protecting such other rights as are guaranteed by the organic law.

Cases cited: Ford v. Farmer, 9 Hum., 152; Maury County v. Lewis County, 1 Swan, 236.

Const. 1870, Art. 10, §4.

### FROM HUMPHREYS.

Appeal from the Chancery Court. G. H. NIXON, Chancellor.

H. M. McADOO for complainant.

W. H. BROADUS and J. O. SHACKLEFORD for defendant.

SNEED, J., delivered the opinion of the Court.

The bill is brought by Humphreys County to readjust the boundary lines between said County of Humphreys and the County of Houston, the former claiming that in the original organization of the latter the constitutional rights of the County of Humphreys were violated by absorbing and appropriating a certain area of territory on its northern boundary, by which

38—VOL. 4.

a part of its northern boundary line was brought within less than eleven miles distance from its Court-house. The County of Houston was organized under an Act of the Legislature, approved on the 23d of January, 1871, entitled an Act to establish the County of Houston out of fractions of the four Counties of Stewart, Montgomery, Dickson, and Humphreys. The bill admits that at the time of the filing thereof the said County of Houston is fully organized, and is in complete exercise of county jurisdiction over the territory involved in this controversy, and has been since its organization. The second section of the Act under which it was organized prescribes what is termed "a general boundary" for the southern line, the interference occurs as follows: "That the general boundaries of said county shall be as follows: Beginning at a mulberry about six poles below the mouth of White Oak Creek, on Tennessee River, running east eleven miles with the old Stewart and Humphreys County line, to a point due north from Waverly eleven miles; thence east with a circle, keeping eleven miles from Waverly, seven miles; thence east six miles to the Dickson County line." The lines were run by the Commissioners of Houston County, in supposed obedience to the general directions thus prescribed, to a point due north from the Court-house of Humphreys County at Waverly, and estimated at eleven miles therefrom, and thence in an easterly curved line seven miles, and thence due east six miles to the Dickson County line, and with this for its southern boundary line the County of Houston was

organized, and was to that boundary line exercising, at the time of the filing of this bill, all the appropriate functions of a political corporation.

It appears, however, upon a subsequent measurement in the interest of Humphreys County, that it was ascertained that this line, from a point on the old Stewart and Humphreys line, a few miles east of the beginning point, as designated in said Act, to the eastern terminus of the seven mile curve, brought that much of the southern boundary of Houston County within a distance of less than eleven miles from the Court-house of Humphreys County, the mistake having occurred as intimated by a surface measurement in the first survey instead of the measurement by horizontal lines.

Upon the hearing the Chancellor ordered a re-survey, so that the southern boundary line at no point should approach nearer than eleven miles from the Court-house of Humphreys County. This survey, designated in the record as the "Ridley survey," began its deflection from the old Stewart line at a point nearly midway between the beginning and the point in the original survey due north from Waverly, indicated in the said original survey as the point due north, eleven miles from Waverly, and thence proceeded by describing the arc of a circle around to a point six miles from the Dickson County line, and thence due east to said Dickson County line, whereas, if the arc of the circle had extended a few miles further, it would have intersected the original east and west line of the first sur-

vey at a point eleven miles from the Court-house at Waverly, and then by running due east to the Dickson line have preserved to Houston an area of its original territory as organized, containing some five or six square miles. Upon the coming in of this report of survey, the defendant excepted "because the circle running easterwardly from the point eleven miles north of the Court-house in Waverly, keeping eleven miles from said Court-house as run by Ridley, and reported in said report, stops at the end of seven miles on the curve from said north point, and then runs east to the Dickson County line, when the defendant insists that said circle shall be continued beyond seven miles, keeping eleven miles from said Court-house, until it intersects the south boundary line of Houston County, as it is now organized and established, and then east to the Dickson County line, with said line of Houston as now established, by which said Houston County will be given five or six square miles of territory more than said Ridley has given it."

The Chancellor overruled his exception, and by final decree adopted the line as reported by the Ridley survey, thus, as alleged, depriving Houston County of a portion of its territory as originally organized, which was not within any inhibition as encroaching upon the constitutional limits of the County of Humphreys.

We think the Chancellor committed no error in disallowing the exception. It is true, as contended, that the Courts of this State have no power to disorganize a county, or any part thereof, which has once

been constitutionally and legally organized and established. New counties may be established by the Legislature. The general restriction is that they shall consist of not less than two hundred and seventy-five square miles, contain a population of seven hundred qualified voters, and that no line of such county shall approach the Court-house of any old county from which it may be taken nearer than eleven miles, nor shall said old county be reduced to less than five hundred square miles. Const. 1870, Art. 10, §4.

It is insisted in this case that no one of these restrictions is violated by the retention intact by Houston County of the area embraced within the exception, and that the Act prescribing the courses and distances of the southern line of Houston County was intended to be only a general guide to the Commissioners, and that the leading paramount idea was to run the line so as to avoid any encroachment upon the constitutional territory of the County of Humphreys. That it is the province of the Chancery Court to see that these constitutional inhibitions are observed, and here its powers and functions must have an end. We are of opinion that the Chancellor has properly settled the controversy. He certainly had the power to press back the southern boundary line of Houston County, so as to secure absolutely the constitutional area to which Humphreys County was entitled, and having done this he could do no less than follow the requirement of the Statute. After running east from the eleven mile point due north of Waverly, thence

east with a circle, keeping eleven miles from Waverly, *seven miles*; thence east *six miles* to the Dickson County line. Assuming the survey to be accurate, it would have been in positive violation of the Statute to have adopted the courses and distances contended for by Houston County. It is true, its territory, as originally organized, is dispoiled, but it is quite clear that the parallelogram claimed under the exception never was lawfully a portion of Houston County. The defendant relies upon the doctrine of *Ford* v. *Farmer*, 9 Hum., 152, in which it was held, that when a County is directed to be established by the General Assembly, and Commissioners appointed for that purpose, and it appears that the Act directing the establishment of the County is unconstitutional and void, a Court of Chancery will restrain, by injunction, the Commissioners from organizing the county. It will, however, go no further. After a county has been organized, a Court of Chancery has no power to abolish it, or to restrain existing officers from executing their several functions. 9 Hum., 152.

This case was cited and reviewed in the case of *Maury County* v. *Lewis County*, 1 Swan, 236, which declares the power of the Chancery Court to protect the constitutional rights of the old county or counties out of which the new one is created. So it may be stated as the settled law, that while the creation of these political corporations is a legislative and not a judicial function, the Court of Chancery has the juris-diction and power to see to it that the Constitution

and law be not violated in fixing the boundaries of the new counties, and in securing to the old counties out of which the new one is carved, so much of its territory as is declared inviolable, or by protecting such other rights of such old counties as are guaranteed by the organic law.

We do not understand the doctrine of the case of *Ford* v. *Farmer* to contravene these principles, but, on the other hand, to affirm them. The question in that case was not the re-adjustment of a county boundary, but the total disorganization of a county. "The adjoining counties," say the Court, "in that case, are not bound by the running of the lines of new counties which infringe upon their constitutional territory."

Without further discussion it is enough to say, that the Chancellor's decree carries out the law, whereas a different ruling would have been in palpable violation of it. The decree will be affirmed, and as there is some complaint as to surveyor's fees and other matters of cost, the cause will be remanded for an account thereof, and a re-taxation, if, in the opinion of the Chancellor, the same should be proper.

Affirm the decree and remand the cause.